# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| WYNDHAM GARY, <br><br> Plaintiff, <br> v. <br><br> BADGER PROCESS SERVICES, INC. and GURSTEL LAW FIRM, P.C., <br><br> Defendants. | Case No. 17-CV-1016-JPS <br><br><br> **ORDER** |

      This is a case about sewer service. Plaintiff, Wyndham Gary ("Gary"), was a defendant in a state-court collection action. He claims that he was never properly served with process. Defendants allegedly made false statements to the contrary in that proceeding. Those false statements nearly allowed the plaintiff to obtain a default judgment against Gary. He has now filed this action against Gurstel Law Firm, P.C. ("Gurstel"), the law firm that represented the plaintiff, and Badger Process Services, Inc. ("Badger"), the company that Gurstel hired to effect service. Gary claims that Defendants' conduct violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and his constitutional due-process rights as protected in 42 U.S.C. § 1983. Defendants have moved to dismiss and, for the reasons stated below, the motion will be granted in part and denied in part.

1. **LEGAL STANDARD**

      Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81.

When considering a motion to dismiss under Rule 12(b)(6), the court is generally limited to the allegations within the four corners of the complaint. To rely upon extrinsic materials, the court would normally be required to convert the motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 12(d). Nevertheless, a court can consider other documents if they are referred to in the pleadings and central to the case. *See* Fed. R. Civ. P. 10(c); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

2.   **RELEVANT FACTS**

Gary incurred a debt with American Express Bank FSB. He defaulted on the debt, and so a lawsuit was instituted against him in Milwaukee County Circuit Court. Gurstel represented the bank, and Badger was retained by Gurstel to serve the summons on Gary.

Gary claims that service was never made. (Docket #24-3 ¶ 6). He alleges that Badger's employee, Timothy Pinney ("Pinney"), provided a false affidavit of service. In the affidavit, Pinney stated that on April 26, 2017, he effected substitute service of the summons on "John Doe (refused to give name)," identified as Gary's "co-resident," at Gary's apartment. (Docket #24-1 at 2). Pinney averred that when he served John Doe, he

"informed said person of the contents [of the summons], in compliance with state statutes." *Id.* The affidavit further reflects that Pinney made three prior, unsuccessful attempts at service on Gary personally during the six-day period leading to April 26. *Id.*

Gary alleges that he was in Houston, Texas on business from April 23–27, 2017. (Docket #22 ¶ 22); (Docket #24-3 ¶ 3). He explains that the "John Doe" mentioned by Pinney was his roommate, Dan Hansher ("Hansher"). (Docket #22 ¶ 21). According to Hansher, Pinney came to their door that night and asked for Gary. *Id.* ¶¶ 23–24. Hansher stated that Gary was out of town and shut the door. *Id.* ¶ 25. Later, Hansher found copies of "documents related to the case"—he did not say whether they were the summons and complaint—outside the door. *Id.* ¶ 26; *see also* (Docket #22 ¶¶ 19–26).

Gurstel later sought a default judgment against Gary. To support the motion, Badger (through Pinney) prepared the false affidavit of service, and Gurstel filed it with the court. Gary, who had heard of the case from Hansher, entered his appearance through counsel and opposed the motion. The court later denied the motion for default judgment.

3. **ANALYSIS**

Gary asserts two claims in this case. First, he contends that Defendants' actions in preparing and relying upon a false affidavit of service in the collection action constituted false and misleading statements made in connection with the collection of a debt, in violation of the FDCPA, 15 U.S.C. § 1692e. Second, Gary argues that Defendants' reliance upon improper service in the state court action denied him his due-process rights secured by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

Defendants' motion to dismiss largely avoids the substance of Gary's claims—that is, Defendants do not contest the notion that sewer service might give rise to an FDCPA or Section 1983 claim. Rather, Defendants say that service was unquestionably proper based on documents the Court can consider in connection with its motion, including Pinney's affidavit of service and Hansher's and Gary's affidavits submitted in the state collection action. For that reason, Defendants posit that no false statement was ever made, and thus no FDCPA or Section 1983 violation occurred.

In Wisconsin, service of process is governed by Wis. Stat. § 801.11, which provides, in relevant part, that service may be made:

> [U]pon a natural person:
>
> (a) By personally serving the summons upon the defendant either within or without this state.
>
> (b) If with reasonable diligence the defendant cannot be served under par. (a), then by leaving a copy of the summons at the defendant's usual place of abode:
>
>> 1. In the presence of some competent member of the family at least 14 years of age, who shall be informed of the contents thereof;
>>
>> 1m. In the presence of a competent adult, currently residing in the abode of the defendant, who shall be informed of the contents of the summons; or
>>
>> 2. Pursuant to the law for the substituted service of summons or like process upon defendants in actions brought in courts of general jurisdiction of the state in which service is made.

Wis. Stat. § 801.11(1)(a)–(b). It is uncontested that service was not made personally upon Gary.

Defendants rest instead on Section 801.11(b)(1m), arguing that Pinney had "no duty to hand the documents to Mr. Hansher" during their

Page 4 of 10

encounter on April 26, 2017. (Docket #24 at 5). Defendants maintain that under Wisconsin law, if a person refuses to accept service, the process server may simply inform that person of the contents of the document and deposit it "in some appropriate place, in the presence of the party if possible, or where it will be most likely to come to his possession. If then the party to be served does not get the copy of the summons it will be entirely owing to his own fault." *Borden v. Borden*, 23 N.W. 573, 574 (Wis. 1885).

Defendants' reliance on *Borden* is misplaced, as there are factual disputes here concerning what transpired on the night of April 26. Assuming for the moment that all of the other elements of service under Section 801.11(b)(1m) are satisfied, there is a material disagreement between Pinney and Hansher as to whether Pinney ever told Hansher about the contents of the document he was serving. Gary has alleged (and Hansher has averred) that the entire exchange between Hansher and Pinney was: (1) Pinney asked for Gary; (2) Hansher informed Pinney that Gary was out of town; and (3) Hansher shut the door. According to Gary and Hansher, nothing more was said, and nothing more occurred between the men, until Hansher later discovered the summons on their doorstep. In fact, Hansher says only that he found "documents related to the case" in front of his door, (Docket #22 ¶ 26); (Docket #24-2 ¶ 6), suggesting that he did not know their nature. Moreover, nothing in Pinney's statements about his prior attempts at service indicates that he interacted with Hansher in any fashion, further undermining the idea that Hansher knew of the contents of the documents before Pinney left them.

Defendants would like the Court to credit Pinney's assertion that he informed Hansher of the contents of the summons. This is not permitted

under the standard of review, which requires the Court to accept Gary's factual allegations as true and draw inferences therefrom in his favor, not against him. *Kubiak*, 810 F.3d at 480–81; *see also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). Thus, while it is true that "Mr. Hansher does not indicate what more was said between [he and Pinney], and the Amended Complaint also leaves out that information," (Docket #24 at 6); (Docket #32 at 7), the Court cannot infer from the absence of such information that something damaging to Gary's claims—notification of the contents of the summons—occurred. Indeed, because the whole case is about Pinney's allegedly false statements in the affidavit of service, it would be inappropriate to believe Pinney's statements over Gary's at this juncture. *Hecker*, 556 F.3d at 582 (noting that where the plaintiff alleged that certain statements in documents were untrue, the district court was correct in "[taking] plaintiffs' point of view on all such disputes"); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (noting that a plaintiff can contradict the contents of an exhibit or other relevant document through specific factual allegations).

Because of this, the Court has no occasion to consider whether Gary was evading service, whether Pinney's prior attempts at service met Wisconsin's "reasonable diligence" standard, or whether Hansher acted unfairly in shutting the door in Pinney's face.[1] All the Court can do at this

---

[1]Defendants, relying upon *Borden*, state that Pinney had no options left after Hansher shut the door on him, and leaving the documents at the door was therefore permissible. (Docket #24 at 9); (Docket #32 at 8–9). But *Borden* dealt with evasion by the defendant himself, not his co-habitant, *see Borden*, 23 N.W. at 574, and the Court will not at this early juncture read *Borden* as broadly as Defendants do. Under the liberal standard of review applicable here, the Court finds that

time is compare Pinney's actions to the requirements of the statute. Drawing all reasonable inferences in Gary's favor, the Court is obliged to conclude that Pinney's attempt at service in the evening of April 26, 2017 did not pass muster. Because his affidavit falsely claimed that all elements of service had been satisfied, the Court must allow Gary's FDCPA claim to proceed.[2]

Before evaluating Gary's Section 1983 claim, the Court will address Gurstel's final, separate argument regarding the FDCPA claim—namely, that it cannot be liable for Badger's false affidavit because Gary has not alleged a sufficient principal-agent relationship between them. (Docket #24 at 13). This contention is without merit, as the Seventh Circuit has plainly held that "[a] debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself. Like the Third Circuit, we think

---

Hansher, a person entirely unconnected with the collection action, was not required to make himself available for conversation with Pinney. Hansher's lack of cooperation did not obviate Pinney's duty to actually inform him of the contents of the summons in order to make proper service under Section 801.11(b)(1m).

[2]The FDCPA contains an exception from its coverage for process servers. It provides that "any person [] serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt" does not fall within the definition of a "debt collector" and therefore cannot be liable under the FDCPA. 15 U.S.C. § 1692a. However, courts have held, and Defendants appear to concede, that this exception does not protect process servers who engage in "coercive, abusive, or harassing activities," including preparing false affidavits of service. *Spiegel v. Judicial Attorney Servs., Inc.*, No. 09 C 7163, 2010 WL 5014116, at *1 (N.D. Ill. Dec. 3, 2010); (Docket #24 at 10–11); *Flamm v. Sarner & Assoc., P.C.*, No. 02–4302, 2002 WL 31618443, at *5 (E.D. Pa. Nov. 6, 2002). The Court need not weigh in on this question at present, since Defendants' argument is premised upon a finding that Pinney's service on Hansher was proper. The Court has concluded that on the facts alleged, it was not, and that is enough to sideline the process-server exception for now.

it is fair and consistent with the Act to require a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000). As long as the purported principal is itself a debt collector—and Gurstel makes no attempt to argue that it is not—liability can be imputed from those the principal contracts with in aid of its debt collection efforts. *See Janetos*, 825 F.3d at 325.

The fact that Gurstel hired Badger to serve process on Gary is enough to satisfy the Court at this early stage that it can be liable for Badger's actions. Besides, Gurstel does not address the distinct allegation that it filed the false affidavit from Badger with the state court, an affirmative act that goes beyond the mere principal-agent relationship relied upon in *Janetos*. *See id.* Thus, Gurstel is incorrect to claim that its liability in this case is premised solely on Badger's conduct. *See* (Docket #24 at 13–14). Consequently, the Court will not dismiss the FDCPA claim as to Gurstel.

Although Gary's FDCPA claim may proceed, the result is different for the Section 1983 claim. In connection with this claim, Defendants assert that Gary's due-process rights were not violated because he eventually received notice of the collection lawsuit, appeared through counsel, and defeated the motion for default judgment. (Docket #24 at 11–13). Thus, he suffered no harm. *Id.* Gary rejoins that deprivation of notice of ongoing proceedings is itself actionable injury. *See* (Docket #29 at 4–5).

Gary's position is undercut by long-standing precedent. Where a due-process claim is premised on a lack of notice, if a plaintiff succeeds in regaining the position he would have occupied had he been given notice, he no longer has any injury upon which to base his federal claim. *Young v.*

*Murphy*, 90 F.3d 1225, 1231 (7th Cir. 1996); *Garry v. Geils*, 82 F.3d 362, 1368 (7th Cir. 1996); *Thomas v. 5445 Edgewater Plaza Condominium Ass'n*, 210 F.3d 376, 2000 WL 279666, at *2 (7th Cir. 2000). Gary does not dispute the fact that he successfully opposed the motion for default judgment in the state case. Indeed, he attached the transcript of the hearing on the motion to his amended complaint. *See* (Docket #22-1); *Hecker*, 556 F.3d at 582. Thus, it is uncontested that Gary managed to overcome Defendants' alleged wrongdoing, and he therefore suffered no injury to his due-process rights.

Gary's citations to *Armstrong v. Manzo*, 380 U.S. 545, 551 (1965), and *United States v. Wiseman*, 445 F.2d 792, 797 (2d Cir. 1971), are unavailing, as in those cases the failure of notice resulted in actual harm. *See Armstrong*, 380 U.S. at 551 (petitioner forced to overcome adverse adoption decree previously entered); *Wiseman*, 445 F.2d at 794 (false affidavits were used to secure default judgments). In *Armstong*, the Court observed that if the trial court had granted the petitioner's motion to set aside the adoption decree, it "would have wiped the slate clean" and "would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place." *Armstrong*, 380 U.S. at 552. That having occurred in Gary's case, there remains no injury on which to base a claim under Section 1983. Of course, because the FDCPA affords statutory damages to a plaintiff who suffers a violation of the rights created thereunder, any failure of actual damages has no effect on the justiciability of that claim. 15 U.S.C. § 1692k(a)(2)(A); *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998). Accordingly, Defendants' motion will be granted as to the Section 1983 claim and denied as to the FDCPA claim.

4.  **CONCLUSION**

Defendants' motion to dismiss relies largely upon disputed facts. Those facts, construed in Gary's favor, compel the Court to deny the motion with respect to his FDCPA claim. However, Gary's due-process claim must be dismissed because, unlike an FDCPA claim, he was required to assert an actual injury to support it. He cannot do so in this case, and so the claim fails.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss the amended complaint (Docket #23) be and the same is hereby **GRANTED in part** and **DENIED in part** as stated herein; and

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss the original complaint (Docket #18) be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 13th day of November, 2017.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge